## ASH ET AL. *v.* CITIZENS BUILDING AND LOAN ASSOCIATION OF MONTGOMERY COUNTY, INC.

[No. 251, September Term, 1960.]

*Decided May 19, 1961.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Marbury and Sybert, JJ.

*R. Edwin Brown* and *J. Alex Johnson,* with whom was *Charles W. Bell* on the brief, for the appellants.

*Charles W. Prettyman,* with whom was *Carl F. Gottschalk* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This case presents questions as to the rights of free shareholders in a building association which, over their objections, transferred all of its assets to another building association.

Appellants filed a petition under Code (1957), Art. 23, Sec. 73, in the Circuit Court for Montgomery County, alleging that they were stockholders in The Montgomery Mutual Building and Loan Association (Montgomery) and complaining that Montgomery had transferred all of its assets to The Citizens Building and Loan Association of Montgomery County, Inc. (Citizens). They alleged they did not vote in favor of the transfer, and either before, or at the meeting of Montgomery's stockholders on October 30, 1959, filed their respective objections in writing to the transfer and "did within twenty days after the acceptance of the Articles of Transfer by the Maryland State Tax Commission, make demand" upon Citizens for payment of the fair value of their stock.

Appellants' bill alleges further that Citizens has claimed that the fair value of appellants' stock is only the face amount of stock held in Montgomery "as represented by the balance on deposit on October 30, 1959" and that Montgomery at the time of the transfer had a net worth "considerably in excess of the total face amount of its capital stock then outstanding, and in addition had going concern value and valuable good will, and all of these things should be taken into account in fixing the fair value which your petitioners are entitled to receive for their shares in the said transferor association."

The relief prayed was that as objecting stockholders, appellants be awarded the fair value of their stock determined as of October 30, 1959, in accordance with Code (1957), Art. 23, Sec. 73, or, if it be decided that Sec. 73 is not applicable to building associations, the transfer be declared void.

Citizens answered that appellants were entitled only to the

amount of their deposits, which it had offered and was ready to pay them, and that the petition for appraisal had been filed more than fifty days after the articles of sale and transfer by Montgomery to Citizens had been accepted for record by the State Tax Commission and was too late, since Code (1957), Art. 23, Sec. 73 (d), mandatorily requires that such a petition for determination of the fair value of the shares of an objecting stockholder must be filed within fifty days of the acceptance of such articles for record.

Appellants thereupon petitioned the court to have determined, prior to trial pursuant to Maryland Rule 502, the following questions of law:

1. Were petitioners stockholders of Montgomery, entitled to have the fair value of their stock determined under Code (1957), Art. 23, Sec. 73?

2. Was the filing of petitioners' request for determination of the fair value of their stock more than fifty days after the acceptance of the articles of transfer for record fatal to their rights?

3. If Sec. 73 of Art. 23 of the Code of 1957 is not applicable, should the transfer be set aside?

Judge Pugh held that appellants were stockholders of Montgomery entitled to invoke the rights given by Sec. 73 of Art. 23 of the Code, but that their request for appraisal and payment had not been made in time.

The case comes to us on a scanty record. The terms of the sale and transfer of Montgomery's assets to Citizens, and the consideration passing to Montgomery's members are not shown. The articles of transfer which were accepted by the State Tax Commission on December 14, 1959, are not in the record, nor is there a summary of their contents, and we are not advised as to the provision of the corporation law under which the transfer was effected. The corporate setup of Citizens has not been revealed to us.

On the record we find nothing to show that the trial court was wrong in his conclusions. Code (1957), Art. 23, Sec. 1, provides in paragraph (a) that "Except as otherwise expressly provided by statute, the provisions of this article shall apply to all corporations existing on June 1, 1951 * * * and

to all corporate acts done on or after said date." Paragraph (e) of Sec. 1 says that if there is an inconsistency between the laws relating to particular classes of corporations "and the provisions of this article which are of general applicability, the former shall prevail to the extent of such inconsistency." Sec. 9 (a) of Art. 23 says: "Every corporation of this State shall have the following general powers, except where special provisions of law relating to corporations of that particular class are inconsistent herewith: * * * (5) * * * to sell, mortgage, lease, pledge, exchange, convey, transfer, and otherwise dispose of all or any part of its property and assets * * *."

There is nothing in the provisions of Sections 144 to 161, inclusive, of Article 23 (which deal directly with building associations) which either expressly prohibits or is inconsistent with the right of a building association to sell and transfer all of its assets. How, then, is the sale to be effected? No method is provided expressly by statute for sales of assets by one domestic association to another, so the provisions as to ordinary business corporations would seem to apply.

It may be inferred that Montgomery, regarding itself as a corporation having capital stock, found the authority to sell in Section 65 (a) of Article 23, which allows "any corporation of this State having capital stock" to sell all its assets, including its good will and franchises "in accordance with the provisions of this sub-title" (Consolidation, Merger and Other Transfers of Properties), and that it proceeded as required by Section 66 (Procedure Generally) and Section 70 (Articles of Sale, Lease, Exchange or Transfer). If it had the right to do so, as we think it had, it follows that Section 72 (Effect of Sale, Exchange or Transfer) and Section 73 (Rights of Objecting Stockholders) became applicable.

It seems plain that Montgomery was a corporation having capital stock. Its charter of 1904 stated that the shares of the association should be five thousand of the par value of one hundred dollars each, and provided that "Every stockholder shall pay one dollar per month on each share of stock held by him in the Association until each unredeemed share shall be worth one hundred dollars * * *." The by-laws pro-

vide that a stockholder who shall withdraw his entire investment and a borrowing stockholder whose stock be redeemed by the settlement of any advance or loan thereon shall cease to be a stockholder. An investing or non-redeeming stockholder "may transfer his shares at any time by written assignment satisfactory to the Board of Directors." The directors are to be elected by the stockholders.

There are various statutory indications that building associations are regarded as corporations having capital stock. Section 144 (a) of Article 23 provides that any building association formed under that article shall state in its certificate of incorporation the par value of its shares "and any such association heretofore or hereafter formed shall have power to accept subscriptions to and payments on account of any number of shares without limit and without other corporate action, notwithstanding any limitation on the number of shares authorized by the existing charter of such association."

Section 149 of Article 23 provides that a building association "shall have power to issue full paid-up shares of stock to its members upon such terms as may be set forth in its by-laws." [1]

Code (1957), Art. 81, Sec. 9 (16), exempts from state, county and city taxation "shares of stock in domestic building and homestead associations," within the limits specified.

There are other statutory provisions which would appear to confirm the right of a building association to proceed under Sections 65, 66, 70, 72 and 73 of Article 23. As has been noted, Section 1(a) of Article 23 makes the provisions of the corporation law apply to all corporations existing on June

---

1. Poole v. Miller, 211 Md. 448, 462, held that a building association could accept new free share money without first offering shares to existing shareholders. In Coltrane v. Blake, 113 F. 785, 787 (C. C. A. 4th), the opinion dealt with an insolvent Maryland building association. It was held that fully paid up stockholders remained stockholders and did not become creditors by reason of the insolvency. The opinion, in the course of an interesting discussion, observed that the relationships between a building association and its stockholders are much the same as those between ordinary business corporations and their stockholders, and that, unless modified by statute, general law controls these relationships.

1, 1951, and to "all corporate acts done on or after said date," in the absence of express provision of law to the contrary, and this would seem to bring the sale of assets by a building association and the rights of its stockholders upon such sale within the scope of the sections applicable to corporations generally, in such situation.

Section 158 of Article 23 allows a building association to regulate the manner of giving notice of the annual meeting of shareholders or members and directs that unless otherwise provided in the by-laws "each shareholder or member shall be given notice * * * in the manner provided for in Sec. 39."

Section 159 of Article 23, which permits, and directs the manner of, conversion of a state into a federal association, provides in paragraph (a) that the "meeting of the shareholders shall be called for such purpose in accordance with the provisions of Sections 38 and 39 of this article * * *." Paragraph (d) says: "All conversions, including sale and exchange of assets under Sections 65, 66, 68, 69, 70, 72 and 73 heretofore made by building, homestead and loan associations in this State are hereby validated and declared to be of the same effect as if said conversions, including sale and exchange of assets, had been effected under the provisions of this section."

We conclude that the appellants were stockholders of a Maryland corporation having capital stock, who duly objected to the sale and transfer of all its assets, which it had the power to make, and therefore had the rights given such stockholders by Sec. 73 of Art. 23 to have their stock valued, and its value paid to them. Sundheim, *Building and Loan Associations* (Third Ed.), Sec. 39a.

There remains the question of whether they enforce those rights in time. We are compelled to conclude that they did not.

In *Roselle Park Trust Co. v. Ward Baking Corporation,* 177 Md. 212, 221, this Court held it incumbent upon an objecting stockholder to comply with all the conditions of the statute giving him the right of appraisal of and payment for his stock and, accordingly, "file his petition, for the appointment of appraisers to value his stock, within the time pre-

scribed by the statute." It held the statutory period a mandatory limitation.

The Court of Appeals of New York reached the same conclusion in the case of *In re McKinney,* 117 N. E. 2d 256, 258. There was a dissent but it was on the matter of when the prescribed period began to run, and did not question that the petition must be filed within the time prescribed if the stockholder's rights were not to be lost.

Since we hold that Sec. 73 of Art. 23 was applicable, we do not reach the alternative question posed by appellants as to whether, if Sec. 73 did not apply, the sale and transfer could be set aside.

*Order affirmed, with costs.*