FEGEAS ET UX. *v.* SHERRILL ET UX.

[No. 78, September Term, 1958.]

*Decided December 24, 1958.*

474

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John E. Oxley* and *David L. Cahoon* for the appellants.

Submitted on brief by *Wm. Wilder Evans* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

Purchasers of a dwelling, some months after they had bought it in 1956, sought cancellation of the contract and deed or, in the alternative, damages equal to the cost of repairs to the dwelling from the ravages of termites. The chancellor sustained the demurrer to an amended bill without leave to amend further and this appeal resulted.

The bill alleged the execution of the contract of sale and the deed, payment of the purchase price partly in cash of the purchasers and partly with the proceeds from a purchase money mortgage to a lending institution, with the balance represented by a second lien to sellers; that sellers knew that purchasers were buying a home and assured them they "could not go wrong"; that, in addition to the "representations aforesaid", there was an implied warranty by sellers that the dwelling was fit for a home and that purchasers relied on the expressed and implied warranties aforesaid in purchasing the house. The bill goes on to allege that two months after purchasers moved in they discovered that the house was "completely riddled with termites", that they had been compelled to remove some of the partitions (constructed of wooden 2″ x 4″s covered with sheetrock), that the weakening of the wooden studdings and joists has made the house dangerous to live in, and that necessary repairs will cost $4,200.00.

It was further pleaded that sellers "deliberately and intentionally concealed" from purchasers "the true condition of said dwelling house"; that sellers (who had moved into

the house in 1951) had "prior to the negotiations between the parties" employed an exterminating company to rid the dwelling of termites; that there was no basement under the house and evidence of termites and damage did not appear and could not have been discovered by the inspection purchasers made; that sellers' superior knowledge of the actual conditions imposed on them not only a moral but a legal duty to make the facts known to purchasers; that agents of sellers had told purchasers that sellers did not want to sell to anyone who would finance with a G.I. or F.H.A. loan, and this was because the appraisal required in such cases would have led to the discovery of the true condition of the dwelling house; that at some time not specified, sellers had replaced baseboards and door frames and had painted the new installations "so that an ordinary inspection * * * would not reveal the removal and replacement"; that purchasers had found in the house timbers in which were cavities caused by termites which had been filled with cement by sellers during their occupancy; and, finally, that purchasers have never before bought or owned a house and "relied upon the integrity" of sellers.

Summarized, the allegations of the bill are that there were actual verbal misrepresentations, an implied warranty of fitness, and concealment and non-disclosure of material defects.

Taking these up seriatim, we think that the statement that purchasers "could not go wrong" in buying the house was not a representation of fact on which a prospective buyer was entitled to rely. In *Milkton v. French,* 159 Md. 126, 132, 133, the home buyer was told that he would be "perfectly safe" in regard to the concrete in the house, its roof and the rest of its construction, and that he would "never regret" the purchase. Judge Parke for the Court said of these quoted phrases: "Nobody places trust in a representation based upon self-praise so general and comprehensive as to cover every detail of a subject matter, which common experience has established never attains that degree of perfection in all its numerous parts. The exaggeration of the statement is so plain that it can not be supposed to have deceived any rational person. Everybody knows a new house, as an old

one, is never perfect in construction * * *"; and, a little later on, added: "It is difficult to find these words, when reasonably considered, as capable of being understood by a man of average intelligence as a clear and definite representation of any particular fact. The language does not condescend to detail. The words used are so vague and general as to be incapable of particular application. They fail, therefore, to mount to a misrepresentation, and are but the indefinite generalities of exaggeration." The words used by the sellers in the case before us are very similar to those just discussed and, like them, are not a clear and definite representation of any particular fact, do not condescend to detail, and are "but the indefinite generalities of exaggeration". In *Urban v. Doolan* (Mich.), 276 N. W. 445, the house sold was so badly infested with termites that the leg of the buyer's piano went through the floor. The seller had said that "it was a very nice house" and "a very good house". In a suit for rescission after consummation of the sale, it was held that there was no misrepresentation of fact.

It is settled in Maryland, as in most jurisdictions, that there are no implied warranties in the sale of real estate. *Berger v. Burkoff,* 200 Md. 561, 566; *Gilbert Construction Co., Inc. v. Gross,* 212 Md. 402, 408.

Concealment and non-disclosure are closely related and in any given situation usually overlap. Restatement, *Restitution,* § 8, comment *b,* says: "Concealment is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise he would have observed. When done without intent to mislead and without misrepresentation, it has no effect except where there is a duty of disclosure.

"Non-disclosure is a failure to reveal facts. It may exist where there is neither representation nor concealment. Except in a few special types of transactions, such as insurance contracts and transactions between a fiduciary and his beneficiary, there is no general duty upon a party to a transaction to disclose facts to the other party." To create a cause of action, concealment must have been intentional and effective

—the hiding of a material fact with the attained object of creating or continuing a false impression as to that fact. The affirmative suppression of the truth must have been with intent to deceive. Restatement, *Torts,* § 550; 1 Black, *Rescission and Cancellation,* 2nd Ed., § 38. Compare *Sun Ins. Office v. Mallick,* 160 Md. 71, 89.

The most that can be attributed to the allegations of the bill before us is that sometime after 1951, when sellers first occupied the home, they discovered termites and employed an exterminator to get rid of them and that the termite damage caused sellers to fill holes in some of the timbers with cement, and also to replace some baseboards, frames and trim and to paint them after they were installed. All of this may have occurred years before the sale to the present complainants. The painting of newly installed trim would be natural and consistent with good stewardship by an owner intending to continue to live in a house, as would the necessary plugging of timber with cement. It is not said by purchasers that sellers did these things with the intent to deceive purchasers, nor can this intent be fairly inferred from any facts alleged in the bill. (In fact, purchasers admit that sellers' reason for moving was that their family had grown too large for that house.) The factual claims of purchasers are no more than that sellers knew there had been termites in the house, that damage had been caused by them and repaired, and that sellers had employed experts to get rid of the insects, but had not disclosed these facts to purchasers and, so, had concealed them.

Unless the seller of real estate, because of fiduciary or other similar relations of trust, is under a duty to disclose facts as to the property known to him but not to the buyer, generally he need not do so, particularly if those facts may be ascertained by the buyer by reasonable inspection or investigation, and the transaction is at arm's length. 3 Pomeroy, *Equity Jurisprudence,* Fifth Ed., § 904, says: "In ordinary contracts of sale, where no previous fiduciary relation exists, and where no confidence, express or implied, growing out of or connected with the very transaction itself, is reposed on the vendor, and the parties are dealing with each other at arm's length, and the purchaser is presumed to have

as many reasonable opportunities for ascertaining all the facts as any other person in his place would have had, then the general doctrine already stated applies: no duty to disclose material facts known to himself rests upon the vendor; his failure to disclose is not a fraudulent concealment." See 1 Black, *op. cit.*, Sec. 41; Restatement, *Torts,* § 551; 91 C. J. S. *Vendor and Purchaser* § 57.

What the Supreme Judicial Court of Massachusetts said in *Swinton v. Whitinsville Sav. Bank* (Mass.), 42 N. E. 2d 808, is entirely apposite here. There the cause of action for fraud was based upon the knowledge of the sellers of a termite condition in the house and concealment in the sense of failure to reveal termite damages to the buyers, and the resultant damage to the buyers. The Court said: "There is no allegation of any false statement or representation, or of the uttering of a half truth which may be tantamount to a falsehood. There is no intimation that the defendant by any means prevented the plaintiff from acquiring information as to the condition of the house. There is nothing to show any fiduciary relation between the parties, or that the plaintiff stood in a position of confidence toward or dependence upon the defendant. So far as appears the parties made a business deal at arm's length. The charge is concealment and nothing more; and it is concealment in the simple sense of mere failure to reveal, with nothing to show any peculiar duty to speak. The characterization of the concealment as false and fraudulent of course adds nothing in the absence of further allegations of fact * * *. If this defendant is liable on this declaration every seller is liable who fails to disclose any non-apparent defect known to him in the subject of the sale which materially reduces its value and which the buyer fails to discover * * *. The law has not yet, we believe, reached the point of imposing upon the frailties of human nature a standard so idealistic as this. That the particular case here stated by the plaintiff possesses a certain appeal to the moral sense is scarcely to be denied. Probably the reason is to be found in the facts that the infestation of buildings by termites has not been common in Massachusetts and constitutes a concealed risk against which buyers are off their guard. But the

law cannot provide special rules for termites and can hardly attempt to determine liability according to the varying probabilities of the existence and discovery of different possible defects in the subjects of trade." See also *Spencer v. Gabriel* (Mass.), 101 N. E. 2d 369.

In *Hendrick v. Lynn* (Del. Ch.), 144 A. 2d 147, 150, there was a suit by the buyer for rescission of a consummated purchase of a home upon discovery of termites and extensive termite damage. Issues of fact were sent to a jury, which found there had been no affirmative misrepresentations, but could not agree on the question of concealment. Vice Chancellor Marvel held for the defendant, saying that even if the vendor knew the house was infested with termites, his failure to disclose the fact to the purchasers was not ground for rescission and observed: "* * * plaintiffs would have the Court adopt a moral code for vendor and purchaser which to date has no substantial legal sanction." He pointed out that the buyers had full opportunity to inspect the house, and said: "Inasmuch as plaintiffs have failed to prove misrepresentation and because their allegations as to concealment fail to state a cause of action, final judgment for defendant on plaintiffs' cause of action based on alleged misrepresentation and judgment of dismissal as to that portion of plaintiffs' claim based on concealment will be entered." See also *Davis v. Dunn* (Fla.), 58 So. 2d 539, another termite case, and compare *Sullivan v. Ulrich* (Mich.), 40 N. W. 2d 126, where there were definite statements that there were no termites in the house.

In the instant case, the parties dealt at arm's length. There was no relationship of trust and confidence between them; there were no representations of facts by the sellers either direct or implied; there were no questions asked by the purchasers as to termites or other conditions of the house; and they had full opportunity to inspect the premises themselves or by a knowledgeable agent (their bill makes apparent by its explanation of how they found the termites and by the allegation that an F.H.A. appraiser would have discovered the actual conditions, that if, at the time of the sale, conditions

were like those discovered later, a proper but routine inspection would have revealed them).

We hold that on the record before us, no more has been shown than bare non-disclosure of the facts that there had been termites and termite damage and repairs, and that this is not enough to justify either rescission or damages.

*Decree affirmed, with costs.*