Patricia E. HALL

v.

The BOARD OF COUNTY COMMIS-
SIONERS OF FREDERICK
COUNTY et al.

Civ. A. No. M-80-1459.

United States District Court,
D. Maryland.

Feb. 24, 1981.

Roger C. Wolf, Knoxville, Md., for plaintiff.

A. Samuel Cook, Stanley Mazaroff and Jana Howard, Baltimore, Md., for defendants.

JAMES R. MILLER, Jr., District Judge.

## MEMORANDUM AND ORDER

In this action for damages, declaratory and injunctive relief, plaintiff contends that the defendants have discriminated against her on the basis of her sex and her physical disability, and have retaliated against her because of her efforts to draft, and have adopted, a county wide affirmative action plan. Plaintiff also contends that the defendants have violated her rights under the First and Fourteenth Amendments, as well as under state law.

Defendants have moved to dismiss on numerous grounds (Paper Nos. 16 & 20). Plaintiff has submitted a memorandum in response (Paper No. 18), and a hearing on defendants' motion was held on February 6, 1981.

### I. Factual Overview

In January of 1978, plaintiff was hired by the Board of County Commissioners of Frederick County to become the Executive Director of the county's Human Relations Council (HRC). One of plaintiff's principal tasks was to develop and help implement an affirmative action plan for the county. Plaintiff served as Executive Director of the HRC from February 6, 1978, to November 22, 1978, when she was informed by letter from defendant Dorsey that she had been fired. Plaintiff has suffered from a physical disability since her birth.

Plaintiff contends that she was hired at a salary considerably lower than that paid to her two male predecessors. She also maintains that she was covered by the county personnel rules during the period of her employment. Under the personnel rules, new county employees are on probation for the first six months of their employment, and are to be evaluated at the end of the first, third, and sixth employment month. According to plaintiff, she was not so evaluated. Instead, on May 31, 1978, some four months after she had been hired, four members of the Board of Commissioners, two members of the HRC, and several other persons held a closed-door discussion of plaintiff's job performance. Despite her request to be informed of the complaints against her and for an opportunity to respond, plaintiff was simply informed that her probationary period was to be extended for an additional ninety days. She was also required to keep a daily log of her activities for the Executive Committee of the HRC. On June 27, 1978, defendant Lochner evaluated plaintiff in writing and, overall, the evaluation was satisfactory. Plaintiff asserts that all of these actions were at variance with the county personnel rules, and that no male department head had ever been evaluated in such a manner. Plaintiff was not evaluated further prior to the expiration of the six month probationary period. She did, however, receive a salary increase on July 1, 1978.

Plaintiff's proposed affirmative action plan was circulated among the Commissioners in May of 1978. In early June of 1978, the plan was formally presented to the Commissioners for their consideration. On September 26, 1978, the HRC instructed plaintiff to mail a copy of the plan, along with a cover letter, to each of the candidates in the county's upcoming general election of Commissioners.

Shortly thereafter, defendant Lochner, after consulting with defendant Bryan, wrote a letter to each candidate withdrawing the cover letter which plaintiff had drafted and sent. Plaintiff was admonished for sending the cover letter and given a negative evaluation on October 17, 1978. This evaluation was conducted by only three members of the HRC. The other members were not consulted and plaintiff was not shown the evaluation until October 23, 1978.

Because of the October 17, 1978, evaluation, the Commissioners held a hearing concerning plaintiff's performance on November 9, 1978. Both plaintiff and the chair of the HRC participated, and all members of the HRC were invited. Later that evening, plaintiff was informed that she had been fired.

On November 20, 1978, plaintiff filed a charge of discrimination with the Maryland

Commission on Human Relations. She received a right-to-sue letter from the Department of Justice on March 12, 1980.

## II. Title VII Claims

### A. Lack of Jurisdiction

■ Defendants contend that the court is without jurisdiction over plaintiff's Title VII claims, counts I and II of the second amended complaint, because plaintiff did not personally file a charge with the EEOC between the 60th and 300th day after the date of the alleged discrimination. Plaintiff concedes that she did not herself file such a charge but asserts that the following undisputed facts satisfy the requirements of sections 706(c) and 706(e), 42 U.S.C. §§ 2000e–5(c) & (e), as a matter of law. The court agrees.

On November 20, 1978, plaintiff filed a discrimination charge with the Maryland Commission on Human Relations (MCHR) (Paper No. 16, Ex. 1), which was noted as received by the MCHR on November 29, 1978. Pursuant to its work sharing agreement with the EEOC (Plaintiff's Motion Ex. 1), the MCHR sent a "Charge Transmittal" to the EEOC on November 29, 1978, and indicated that the charge would be processed initially by the MCHR (Paper No. 16, Ex. 2). The EEOC acknowledged receipt of the charge on December 5, 1978, and gave it an EEOC charge number (Paper No. 16, Ex. 2). On December 5, 1978, the EEOC sent notice of the charge to defendant Frederick County (Paper No. 16, Ex. 3). The notice informed the county that the EEOC had received plaintiff's discrimination charge, that the charge would be deferred to the MCHR, and that the EEOC would assume jurisdiction upon the expiration of 60 days or the termination of the MCHR's proceeding, whichever occurred first.

■ It is now well settled that in a deferral state a charge may not be "filed" with the EEOC until either the state proceedings have terminated or 60 days have passed. This is the case even if a charge is physically received and acted upon by the EEOC on an earlier date. *Mohasco Corp. v. Silver*, 447 U.S. 807, 818, 100 S.Ct. 2486, 2492–93, 65 L.Ed.2d 532, 542–43 (1980). Therefore, plaintiff's charge was not "filed" with the EEOC on December 5, 1978. The questions presented in this case then, are (1) whether the MCHR may file a charge with the EEOC on behalf of an individual and (2) whether a charge transmitted to the EEOC prior to the expiration of the time set out in section 706(c), 42 U.S.C. § 2000e–5(c), may be deemed to have been filed with the EEOC within the limitations period set out in section 706(e), 42 U.S.C. § 2000e–5(e).

It is true, as defendants urge so strenuously, that Article 49B, *Md.Ann.Code*, does not expressly authorize the MCHR to file charges with the EEOC on behalf of individual complainants. That fact, however, is irrelevant to the issues to be decided. Section 706(e), 42 U.S.C. § 2000e–5(e), states expressly that a charge may be filed with the EEOC either "by *or on behalf of* the person aggrieved." (Emphasis supplied). Additionally, EEOC's regulations provide that "[the] Commission shall receive information concerning alleged violations of Title VII from any person," 29 C.F.R. § 1601.6 (1979), and that a "charge *on behalf of a person* claiming to be aggrieved may be made by any person, agency, or organization." (Emphasis supplied). 29 C.F.R. § 1601.7(a) (1979).

Under the work sharing agreement in force when plaintiff filed her state charge, the EEOC had designated the MCHR as "an agent of EEOC for the purpose of receiving charges on behalf of EEOC." (Plaintiff's Motion Ex. 1, at ¶ 2). Although the MCHR had primary responsibility for processing charges originally received by it, that agency was under an obligation to forward such a charge to the EEOC and inform the charging party that the complaint would be so forwarded (Plaintiff's Motion Ex. 1, at ¶¶ 1 & 6).

In *Love v. Pullman Co.*, 404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972), the Court held that "[n]othing in the Act suggests that state proceedings may not be initiated by the EEOC acting on behalf of

the complainant rather than by the complainant himself." Although *Love* was decided in a factual setting almost in reverse of that found in this case, its reasoning, when analyzed in connection with the language of section 706(e), the work sharing agreement, and the applicable regulations, indicates that a state agency may file an EEOC charge on behalf of a person who has initiated state charges. The court holds, therefore, that the MCHR could have filed a charge on behalf of plaintiff with the EEOC.

The next question is whether plaintiff's charge was "filed" with the EEOC within the applicable limitations period. Defendants contend that it was not filed with the EEOC after the 60th, but before the 300th day, from the date of the alleged discrimination, because there is no evidence that the EEOC did anything with plaintiff's charge after the deferral period. Defendants also note that the EEOC acted as if the charge were filed on December 5, 1978, by sending to defendant Frederick County a charge notice. In sum, defendants maintain that plaintiff was required to file a charge with the EEOC after the expiration of the deferral period even though her charge had been previously transmitted to the EEOC by the MCHR.

Reading such a requirement into the Act would neither promote Congress' goal of fostering federal/state cooperation nor protect defendants from stale claims. Moreover, it would conflict with the reasoning and practical effect of the Court's decision in *Love.* In that case the EEOC had received a complaint on May 23, 1966. Since the allegedly discriminatory acts took place in a deferral state, the EEOC, in accordance with its usual practice, "treated this letter as a complaint but did not formally file it." 404 U.S. at 524, 92 S.Ct. at 617. Instead, the charge was deferred to the state commission, which subsequently notified the EEOC that it waived the opportunity to investigate. Although the complainant never filed a charge with the EEOC after the state relinquished jurisdiction, the Court found that Title VII's jurisdictional requirements had been satisfied. The

Court held that the EEOC could properly "hold a complaint in 'suspended animation,' automatically filing it upon the termination of state proceedings." 404 U.S. at 526, 92 S.Ct. at 618 (footnote omitted). The Court set out the following reasons for this result:

"We see no reason why further action by the aggrieved party should be required. The procedure complies with the purpose both of § 706(b), to give state agencies a prior opportunity to consider discrimination complaints, and of § 706(d), to ensure expedition in the filing and handling of those complaints. The respondent makes no showing of prejudice to its interests. To require a second "filing" by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality."

404 U.S. at 526, 92 S.Ct. at 618 (footnote omitted).

Subsequently, in *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Court commented upon the practical ramifications of the *Love* rule:

"In practice, § 706(c) has resulted in EEOC's development of a referral and deferral system, which the Court approved in *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). When a charge is filed with the EEOC prior to exhaustion of state or local remedies, the Commission refers the complaint to the appropriate local agency. The EEOC then holds the complaint in "suspended animation." *Id.,* at 526, 92 S.Ct. 616, 30 L.Ed.2d 679. Upon termination of the state proceedings or expiration of the 60-day deferral period, whichever comes first, the EEOC automatically assumes concurrent jurisdiction of the complaint. *Ibid.*"

447 U.S. at 64, 100 S.Ct. at 2031, 64 L.Ed.2d at 734 (footnote omitted).

As evidenced by the content of the EEOC notice sent to defendant Frederick County on December 5, 1978, the EEOC's handling of plaintiff's charge essentially mirrors the

procedure set out above. The notice stated expressly that the EEOC had received a complaint, that the complaint had been deferred to the MCHR, and that the "Commission will assume jurisdiction over this charge upon the expiration" of the deferral period (Paper No. 16, Ex. 3). Thus, defendants were on notice that the standard deferral procedure would be followed.

At the time plaintiff filed her charge with the MCHR she also intended to file one with the EEOC (Paper No. 22, at ¶ 3). The reason she did not do so is because an MCHR employee informed her of the work sharing agreement between the MCHR and the EEOC, and told her specifically that the charge would be forwarded automatically to the EEOC (Paper No. 22, at ¶¶ 4, 5 & 6). These facts distinguish this case from the situation involved in *Lopez v. Sears, Roebuck & Co.*, 493 F.Supp. 801, 804–06 (D.Md. 1980). To require either plaintiff or the EEOC to follow additional procedures would simply create needless technicalities of no substantive value under the circumstances.

Nothing in *Mohasco* militates against a finding here that plaintiff's charge was legally filed with the EEOC upon the termination of the deferral period. To the contrary, *Mohasco* reaffirmed the continued vitality of the *Love* rule. 447 U.S. at 817 & n.20, 823 n.39, 100 S.Ct. at 2492–93 & n.20, 2495 n.39, 65 L.Ed.2d at 542–43 & n.20, 546 n.39. The court holds, therefore, that plaintiff's complaint was timely filed with the EEOC and that this court has jurisdiction over her Title VII claims.

### B. Failure to State a Claim

■ Defendants next argue that plaintiff's retaliation claim, count II of the second amended complaint, fails to state a cognizable claim under the "opposition" clause of section 704(a), 42 U.S.C. § 2000e–3(a).

In count II, plaintiff alleges that the defendants retaliated against her "[b]ecause of her opposition to the County's employment policies and practices, as reflected in her efforts to formulate and have adopted a County-wide Affirmative Action Plan" (Paper No. 15, at ¶ 27). Plaintiff also alleges that "it was her belief that Frederick County's failure to have an Affirmative Action Plan was a violation of existing law . . . [t]his belief was reinforced by the emphasis placed by the County on the need for her to draft and help them implement an Affirmative Action Plan" (Paper No. 15, at ¶ 26).

Defendants' challenge to this count is twofold. Defendants first contend that what plaintiff was "opposing" was defendants' failure to adopt an affirmative action plan. Since Title VII does not require the county to have an affirmative action plan, defendants maintain that there was no opposition to an employment practice made unlawful by Title VII. Defendants' second contention is that even if plaintiff's "opposition" was an activity within the purview of section 704(a), her status as the county's EEO officer narrows the scope of the "opposition" protected under section 704(a).

In response, plaintiff first asserts that she need only have had a reasonable belief that the policies or practices she was opposing violated Title VII to come within section 704(a)'s protection. Plaintiff also contends that simply because her opposition to the county's existing policies and practices were manifested by her attempt to implement an affirmative action plan, this does not mean that she was opposing solely the county's refusal to adopt such a plan.

■ Both plaintiff and defendants cite numerous cases in support of their respective positions. Each decision, however, was based upon a unique set of circumstances. As this court has recently noted:

"A motion to dismiss under Rule 12(b)(6), tests the legal sufficiency of the complaint. Yet, it is well established that the "complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232 [246], 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980), *citing Conley v. Gibson*, 355 U.S.

41, 45–46, 78 S.Ct. 99, 101–106, 2 L.Ed.2d 80 (1957). *See Tahir Erk v. Glenn L. Martin Co.,* 116 F.2d 865, 870 (4th Cir. 1941). In ruling on a motion to dismiss, the court must consider as true all of the properly pleaded allegations contained in the complaint. *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). Moreover, the allegations will be construed liberally in favor of the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and the court must disregard the contrary allegations of the opposing party. *A. S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir. 1969). *Chertkof v. Mayor & City Council of Baltimore,* 497 F.Supp. 1252, 1258 (D.Md.1980).

While the validity of plaintiff's retaliation claim may be decided ultimately as a matter of law, the record in this case is presently too incomplete for the court to make an informed decision. Defendants' motion to dismiss plaintiff's retaliation claim, therefore, will be denied.

### III. Section 1983

In count III of the second amended complaint plaintiff asserts that by discharging her for opposing discriminatory employment practices and for advocating the adoption of an affirmative action plan, defendants have violated her First Amendment rights. This claim is brought pursuant to 42 U.S.C. § 1983. Defendants have advanced several grounds for dismissal.

### A. Statute of Limitations

■ Defendants contend that plaintiff's section 1983 claim is barred by the statute of limitations. Defendants concede that for the court to reach this conclusion it would have to rule that the limitations period applicable to plaintiff's claim is the six month period set out in section 9(a) of Article 49B, *Md.Ann.Code.* Section 9(a) provides in part:

"Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission ... a complaint in writing under oath .... A complaint must be filed within six months from the date of the occurrence alleged to be a violation of this article."

Defendants contend that the limitations period set out in section 9(a) is the one most analogous to the cause of action alleged under count III because, although couched in First Amendment terms, plaintiff's allegations are in essence employment discrimination claims. In support, defendants note that count III incorporates by reference the same factual allegations that are incorporated into counts I and II. Defendants contend, therefore, that plaintiff is attempting to base a section 1983 claim on rights granted by Title VII.

In support of their position, defendants rely on *Burns v. Sullivan,* 619 F.2d 99 (1st Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980), and *O'Hara v. Kovens,* 473 F.Supp. 1161 (D.Md.1979). Both cases are readily distinguishable and do not support the application of a six-month limitations period to plaintiff's First Amendment claim.

In *O'Hara,* the claim asserted pursuant to section 1983 was founded upon alleged violations of Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5. Judge Young held that the most analogous state statute of limitations was the one year period of Maryland's Blue Sky Law, *Md. Corp. & Ass'ns Code Ann.* § 11–703(f)(2), rather than the three year period for traditional fraud actions. *Md.Cts. & Jud.Proc. Code Ann.* § 5–101.

In *Burns,* a white police officer brought suit when other applicants, including blacks, were promoted over him even though he ranked higher on the state civil service promotion list. The plaintiff's section 1983 claim was characterized as an action "alleging [a] denial of equal protection in the form of racial discrimination." 619 F.2d at 105. Noting that the plaintiff had two analogous state remedies for denial of promotion, the court held that the six month statute of limitations applicable to the state

remedies applied to his section 1983 claim rather than the general tort statute of limitations. 619 F.2d at 106–07.

■ It is now settled that section 1983 may serve as the vehicle for redressing violations of rights secured by federal statutes, as well as those guaranteed by the constitution. *Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2503–05, 65 L. Ed.2d 555, 559–61 (1980). Nevertheless, under the reasoning employed by the Court in *Great American Federal Savings & Loan Assn. v. Novotny,* 442 U.S. 366, 372–78, 99 S.Ct. 2345, 2349–52, 60 L.Ed.2d 957 (1979), it is arguable that rights secured by Title VII may not be used as the basis for a section 1983 suit.

■ In this case, however, Count III of plaintiff's second amended complaint alleges a violation of the First Amendment. Further, plaintiff's counsel stated in open court that plaintiff seeks redress of constitutional rights only under that count. Although the alleged First Amendment violation may have arisen in the same setting as plaintiff's Title VII claims, this fact does not operate to divest plaintiff of any other claims she might have. *Cf., Johnson v. Railway Express Agency,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975) (plaintiff may assert both Title VII claims and section 1981 claims in same action). Accordingly, the court concludes that Maryland's general three year statute of limitations applies to plaintiff's section 1983 claim. *Davidson v. Koerber,* 454 F.Supp. 1256, 1261 (D.Md.1978). *See Dixon v. Montgomery County,* 23 FEP Cas. 865, 866 (D.Md.1980).

*B. Rule 8(a)(2)*

■ Defendants have also moved to dismiss count III on the ground that it violates the requirements of Rule 8(a)(2), Fed.R. Civ.P., in not presenting facts sufficient to give defendants notice of the basis of plaintiff's claim. Contrary to defendants' assertions, plaintiff has not set out unsupported conclusory allegations. *See United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979). Count III alleges that plaintiff was discharged for advocating certain views. The underlying factual setting is contained in paragraphs ten through twenty-one of the second amended complaint (Paper No. 15). Taken together, defendants certainly have "fair notice of what the claim is and the ground upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

*C. Rule 12(b)(6)*

Defendants assert that under the standards set out in the Supreme Court cases addressing the First Amendment rights of public employees, *see, e. g., Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), count III of plaintiff's second amended complaint fails to state a First Amendment claim. Defendants reason that because plaintiff was a county EEO officer, her advocacy of affirmative action and equal employment was simply an aspect of her employment. According to defendants, therefore, plaintiff's advocacy was *necessarily* not that of a private citizen commenting on issues of public concern but rather that of a disruptive employee whom the county discharged to promote discipline and harmony among co-workers.

■ In the public employment context a balance is struck between the employee's First Amendment interests and the state's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. at 568, 88 S.Ct. at 1734. Although a variety of factors are to be considered in arriving at this balance, *see, e. g., Givhan v. Western Line Consolidated School District,* 439 U.S. at 414–15 nn. 3 & 4, 99 S.Ct. at 696–97 nn. 3 & 4, "[t]he initial issue . . . is whether there was, in fact, an interference with the efficiency of the public services performed." *Jannetta v. Cole,* 493 F.2d 1334, 1336 (4th Cir. 1974). Thus, unless the

speech or conduct at issue has interfered with either the employee's job performance or the agency's functioning, a discharge based on speech or conduct otherwise protected by the First Amendment is constitutionally impermissible. *See, e. g., Pickering v. Board of Education,* 391 U.S. at 572–73, 88 S.Ct. at 1736–37; *Tygrett v. Barry,* 627 F.2d 1279, 1282 (D.C. Cir. 1980).

While plaintiff may not be able to show ultimately that defendants had a First Amendment abridgement motive that was a "but for" reason for her dismissal, *Givhan v. Western Line Consolidated School District,* 439 U.S. at 416–17, 99 S.Ct. at 697–98; *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. at 285–87, 97 S.Ct. at 575–76, this court cannot fulfill its duty under *Pickering* given the present state of the record. Without factual findings, a stipulation of undisputed facts, or a presentation of undisputed material facts, the interests of neither party can be adequately determined. Therefore, the court will deny defendants' motion to dismiss count III of the second amended complaint.

### IV. Rehabilitation Act Claim

Defendants have moved to dismiss count IV of the second amended complaint on the ground that plaintiff lacks standing to sue under section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

In *Trageser v. Libbie Rehabilitation Center, Inc.,* 590 F.2d 87, 89 (4th Cir. 1978), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979), the court held that a private action under section 504 "may not be maintained unless a primary objective of the federal assistance is to provide employment." *Accord, Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226, 1234–37 (7th Cir. 1980); *Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672, 674–75 (8th Cir. 1980).

Although it is undisputed that Frederick County receives various forms of federal assistance, plaintiff has conceded that "the funds used to pay her salary did not come from federal funds specifically designated to provide employment for her." (Paper No. 9, at 3). Nevertheless, plaintiff maintains that because the federal funds are "non-earmarked," and the county has the option to use the funds as it sees fit, the holding of *Traegeser* should not control. In support of this contention plaintiff relies on Judge McMillian's concurring opinion in *Carmi.* 620 F.2d at 676–80.

While Judge McMillian's reasoning is persuasive, this court is bound by the decisions of the Fourth Circuit. Therefore, since plaintiff has not alleged, and indeed cannot show, that she was the intended beneficiary of federal funds designated to provide employment, count IV must be dismissed.

### V. State Law Claims

Defendants contend that this court lacks subject matter jurisdiction over plaintiff's state law claims, or in the alternative, should decline to exercise pendent jurisdiction over them.

Count V is a claim for breach of an employment contract. Plaintiff alleges that the Frederick County personnel rules were part of her contract with defendants, and that by failing to abide by them defendants breached the terms of plaintiff's contract. Count VI, which alleges that defendants Lochner and Bryan intentionally interfered with plaintiff's contract, has been dismissed voluntarily (Paper No. 21).

Defendants' first contention is that the claim asserted in count V is not an independent civil wrong under state law. According to defendants, because the factual allegations relied upon to support this count are the same allegations upon which plaintiff bases her federal employment discrimination claims, plaintiff has no cause of action under the holding of *Dillon v. Great Atlantic & Pacific Tea Co., Inc.,* 43 Md.App. 161, 403 A.2d 406 (1979).

In *Dillon,* the plaintiff alleged that the defendant had failed to hire her because of her physical disability. She contended that Article 49B, *Md.Ann.Code,* which forbids, in part, employment discrimination on the basis of handicap, created a private cause of action. In sustaining the circuit court's dis-

missal of the suit, the Court of Special Appeals held that the statute relied on did not create a private cause of action but created only certain administrative remedies. Plaintiff's sole source of redress for those acts made unlawful by Article 49B, therefore, was the administrative process of the Maryland Commission on Human Relations. 43 Md.App. at 167, 403 A.2d 406.

It is apparent that neither the holding nor the reasoning of *Dillon* forecloses plaintiff's state law claim. Unlike the plaintiff in *Dillon*, plaintiff does not base her claim on Article 49B. Rather, she relies upon a well established common law cause on action. In *Dillon*, the plaintiff was never hired. Here, however, plaintiff is alleging that defendants breached an existing employment contract. The fact that the same circumstances give rise to Title VII claims does not mean that other types of claims associated with those circumstances are precluded.

Further, the court is satisfied that plaintiff's federal and state claims do "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). All of plaintiff's claims concern the same historical conduct and time period. *See, e. g., Medley v. Ginsberg*, 492 F.Supp. 1294, 1305 (S.D.W.Va.1980). The questions of state law do not at this time appear so unique as to counsel against the exercise of pendent jurisdiction. There are numerous Maryland decisions examining the contours of plaintiff's state law claim, and the application of the county personnel rules is likely to be predominantly a question of fact. *See, e. g., Gilbert v. Bagley*, 492 F.Supp. 714, 748–49 (M.D.N.C.1980).

### VI. Compensatory Damages

 Defendants assert that plaintiff's prayer for compensatory damages should be stricken because her section 1983 claim is joined with her Title VII claims. Although the relief available under Title VII is equitable in nature, section 1983 comprehends the payment of compensatory damages. *Carey v. Piphus*, 435 U.S. 247,

254–57, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978). Simply because plaintiff has joined Title VII claims with a section 1983 claim does not result in her losing her right to recover compensatory damages if she prevails on the section 1983 claim. *Bradshaw v. Zoological Society of San Diego*, 569 F.2d 1066, 1068 (9th Cir. 1978).

For the reasons set out above, it is this 24th day of February, 1981, ORDERED:

1. Defendants' motion to dismiss plaintiff's Rehabilitation Act claim is GRANTED.

2. In all other respects defendants' motion to dismiss plaintiff's second amended complaint is DENIED.