**Edna AUGENSTEIN, Plaintiff,**

v.

**McCORMICK & COMPANY, INC., et al., Defendants.**

**Civ. No. HM81–1491.**

United States District Court,
D. Maryland.

Feb. 27, 1984.

Samuel P. Sporn, Schoengold & Sporn, New York City, Andrew Jay Graham, C. Thomas Williamson, Kramon & Graham, Baltimore, Md., for plaintiff.

Richard W. Single, Sr., Morgan, Lewis & Bockius, Hunt Valley, Md., Donald A. Scott, Jessica Sanders Jones, Morgan, Lewis & Bockius, Philadelphia, Pa., John Linsenmeyer, New York City, for McCormick, Inc.

Nicholas M. Cannella, Simpson, Thacher & Bartlett, New York City, for Lehman Bros. and Kuhn Loeb, Inc.

John Martin Jones, Jr., John A. MacColl, C. Lamar Garren, Piper & Marbury, Baltimore, Md., for individual defendants.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Presently pending before this Court is defendants' motion, pursuant to Fed.R. Civ.P. 12(b)(6), to dismiss plaintiff's complaint on the ground that it fails to state a claim upon which relief can be granted. Memoranda in support of and in opposition to this motion have been filed by the parties and considered by the Court. A hearing on this motion was held before the Court on February 17, 1984. For the reasons stated herein, defendants' motion to dismiss will be granted. In light of this dismissal, it is not necessary to consider plaintiff's motion for class action certification.

### I. *The Facts*

In 1979 and 1980, McCormick & Company, Inc. ("McCormick") was successful in defending itself against a takeover attempt by Sandoz Ltd. ("Sandoz"), a Swiss corporation. In October, 1979, Sandoz announced that it had acquired 5% of McCormick's stock, and that it had an interest in acquiring the remainder of that stock. In March, 1980, Sandoz submitted to the Board of Directors of McCormick a written proposal for a cash merger between the two companies.

Under Maryland law, a cash merger must be approved by a corporation's officers before being presented to the stockholders for their approval. Md. Corps. & Ass'ns Code Ann. § 3–105 (Cum.Supp. 1983). In May, 1980, McCormick's officers met to consider the Sandoz offer. The offer was rejected, and therefore it was never presented to McCormick's stockholders. Sandoz never made a tender offer for McCormick's stock.

In September, 1980, McCormick brought a claim under the federal securities laws against Sandoz. Pursuant to the settlement of that case, McCormick agreed to purchase back the shares of its stock held by Sandoz.

Plaintiff purchased 100 shares of McCormick's stock for $25.00 per share on April 17, 1980,[1] and sold all of these shares for $22.00 per share on September 3, 1980, the

---

1. The date of purchase was given as March 17, 1980 in the original complaint and the First Amended Complaint, but was changed to April 17, 1980 in the Second Amended Complaint.

second business day after the public announcement of the settlement of McCormick's suit against Sandoz. The original complaint, filed on February 6, 1981 in the Southern District of New York and subsequently transferred to this Court, set out two claims against McCormick, the individual defendants (who constituted the Board of Directors of McCormick), and Lehman Brothers Kuhn Loeb, Inc. The first count alleged that certain misrepresentations by defendants in connection with their defense of McCormick against the Sandoz takeover attempt violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976) ("Rule 10(b)) and the rules and regulations promulgated thereunder. These misrepresentations did not relate to any alleged accounting irregularities. The second count, a pendent state law claim, alleged that the individual defendants breached their fiduciary duty to McCormick and its shareholders by illegally preventing plaintiff and other class members from voting on and participating in the merger offer from Sandoz.

On June 12, 1981, McCormick issued a press release announcing certain accounting irregularities in its Grocery Products Division and restating its 1981 earnings. On November 20, 1981, plaintiff filed a First Amended Complaint, which included a third count alleging that these accounting irregularities violated Section 10(b) and the rules and regulations promulgated thereunder.

In a Memorandum and Order dated May 28, 1982, this Court denied plaintiff's Motion for Class Certification with respect to the First Amended Complaint. That order stated that "there is simply no logical relationship whatsoever among the three different schemes to defraud set forth in the complaint." This Court found that the claims set out in that complaint did

not involve a common course of conduct by the defendants but rather three legally distinct alleged misrepresentations or sets of misrepresentations. The events surrounding the plaintiff's purchase and sale of McCormick securities do appear

to make her typical of those defrauded by the second set of misrepresentations (those concerning the incompatability of McCormick and Sandoz), but her relationship to the first and third alleged misrepresentations is far more attenuated. According to the complaint, the plaintiff bought 100 shares of McCormick stock on March 17, 1980 and sold all her shares on September 3, 1980. She thus held the shares during the period in which the individual defendants were allegedly issuing false statements in their battle with Sandoz. It is likely, however, that her purchase preceded the time when the third fraudulent act, the inflation of reported earnings for 1980, could possibly have affected the price of McCormick stock. She is thus not typical of investors who were victimized by the third alleged conspiracy by having to pay higher prices for their stock, since she would have been aided by price inflation rather than harmed.

On May 27, 1982, McCormick filed an 8–K Report with the Securities and Exchange Commission ("SEC") and issued a press release concerning an investigation and report by special counsel of McCormick's accounting irregularities between 1977 and 1981. Eight separate class actions were filed shortly after that press release. These cases, hereinafter referred to as the "Accounting Cases," were consolidated by this Court pursuant to a stipulated pre-trial order dated November 30, 1982. *See Taubman v. McCormick & Co.,* Civil Action No. HM–82–1482.

On August 10, 1982, plaintiff's counsel filed two complaints. The first was the Second Amended Complaint in this case. The second was *Blaisdell v. McCormick & Co.,* which, like the Accounting Cases, alleged that defendants had artificially inflated the market price of McCormick's stock during the 1977–1981 period by issuing false earnings reports. *Blaisdell* was consolidated with the Accounting Cases pursuant to the pre-trial order dated November 30, 1982.

The Second Amended Complaint was a class action suit with two counts. Plaintiff alleged that the class of plaintiffs consisted of all persons who purchased non-voting common stock of McCormick between November 1, 1979 and September 3, 1980 (¶ 8A). The first count alleged that defendants, through certain acts and transactions,

> have caused the Sandoz merger and/or tender proposal to be withdrawn and terminated, defeating the rights of the plaintiff and members of the class to receive a substantial premium on their McCormick stock and further caused the non-voting stock of McCormick, owned by plaintiff and members of the class, to be artificially depressed, in violation of Section 10(b) of the Exchange Act and the rules and regulations promulgated thereunder, whereby plaintiffs have suffered financial damage.

(Second Amended Complaint, ¶ 24). The second count set forth a pendent state law claim that defendants had a fiduciary duty to McCormick and its shareholders "to properly and carefully consider and evaluate any merger and/or tender proposals from third parties, including the instant Sandoz proposal," and that defendants had breached this duty by illegally preventing McCormick's shareholders from voting on or participating in the merger offer by Sandoz. *Id.* ¶¶ 23–24. Plaintiff prayed for a judgment "[r]equiring defendants to account for damages sustained due to their wrongful acts, plus interest, costs and disbursements and/or requiring defendant McCormick to offer to plaintiff and the other class members to purchase their McCormick stock at an equivalent price of the Sandoz merger and/or tender offer." *Id.* ¶ 24B.

II. *The Standard for Determining a Motion to Dismiss for Failure to State a Claim under Fed.R.Civ.P. 12(b)(6)*

The standard for ruling on a motion to dismiss for failure to state a claim upon which relief can be granted is set out in *Chertkof v. Mayor & City Council of Baltimore,* 497 F.Supp. 1252, 1258 (D.Md. 1980):

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. Yet, it is well established that the "complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232 [100 S.Ct. 502, 62 L.Ed.2d 441] (1980), *citing Conley v. Gibson,* 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–102, 2 L.Ed.2d 80] (1957). *See Tahir Erk v. Glenn L. Martin Co.,* 116 F.2d 865, 870 (4th Cir. 1941). In ruling on a motion to dismiss, the court must consider as true all of the properly pleaded allegations contained in the complaint. *Jenkins v. McKeithen,* 395 U.S. 411, 421–22 [89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404] (1969). Moreover, the allegations will be construed liberally in favor of the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236 [94 S.Ct. 1683, 1686, 40 L.Ed.2d 90] (1974), and the court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir. 1969). (unofficial citations omitted).

This Court will consider as true all properly pleaded allegations contained in the complaint, and all allegations will be construed liberally in favor of the pleader. *Hall v. Board of County Comr's of Frederick County,* 509 F.Supp. 841, 846–47 (D.Md. 1981); *Greene v. Johns Hopkins Univ.,* 469 F.Supp. 187, 189 (D.Md.1979); *Midway Enterprises v. Petroleum Marketing Corp.,* 375 F.Supp. 1339, 1340 (D.Md.1974). In *Caddell v. Singer,* 652 F.2d 393, 394 (4th Cir.1981), the Fourth Circuit, in reversing a dismissal under Rule 12(b)(6), characterized the heavy burden facing the movant who seeks dismissal of an action for failure to state a claim upon which relief can be granted: "We are unable to say that the complaint, if read in the light most favorable to the complainant with every doubt resolved in his behalf, fails to state any valid claim for relief."

III. *The Alleged Misrepresentations Fail to State a Claim Under Section 10(b) or Rule 10b–5*

Defendants' motion to dismiss [2] contends that the Second Amended Complaint fails to state a claim under the federal securities laws upon which relief can be granted because it states only a claim for breach of fiduciary duty. In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court held that a complaint alleging breach of fiduciary duty and mismanagement does not state a cause of action under Section 10(b) and Rule 10b-5, without a showing of manipulation, deception, or misrepresentation or omission of a material fact.

■ The gravamen of plaintiff's complaint is that defendants entered into a secret conspiracy to issue false and misleading statements "in order to ward off and/or defeat the Sandoz proposal and to perpetuate the positions of the individual defendants and control McCormick for themselves and have McCormick remain an independent company at all costs" (Complaint, ¶ 13). The complaint alleges three specific misrepresentations by McCormick and Harry K. Wells, McCormick's Chairman and Chief Executive Officer.[3] The first alleged misrepresentation is that McCormick "falsely stated that certain aspects of the drug business of Sandoz would be incompatible with McCormick's food business, and hence an affiliation would be detrimental to McCormick and its shareholders" (Complaint, ¶ 12). The second alleged misrepresentation is that McCormick, in a letter to Sandoz by defendant Wells, falsely and misleadingly stated that investors had been hurt by Sandoz (Complaint, ¶ 14). The third alleged misrepresentation is that, on or about March 17, 1980, McCormick, "in a false and misleading announcement, stated that after due deliberation, the McCormick Board of Directors rejected the Sandoz offer on the grounds, *inter alia,* that it was inadequate and untimely and not in the best interests of McCormick shareholders and the other constituencies to which McCormick had obligations" (Complaint, ¶ 17).

*Santa Fe* requires the dismissal of plaintiff's claims based on Section 10(b) and Rule 10b-5 because the allegations of the complaint clearly demonstrate that the gravamen or "central thrust" of the cause of action is breach of fiduciary duty and mismanagement. In *Panter v. Marshall Field & Co.*, 646 F.2d 271 (7th Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981), the Seventh Circuit, in affirming a directed verdict, held that allegations of breach of fiduciary duty by the defendant directors of a target company in resisting a tender offer did not violate Section 10(b) and Rule 10b-5. The plaintiffs alleged that defendant directors had violated Section 10(b) and Rule 10b-5 by failing to disclose their policy of resisting all offers and their motivation for resisting such offers, which was to preserve their control. The Court stated:

> The critical issue in determining whether conduct meets the requirement of deception, the Court announced in *Santa Fe Industries,* is whether the conduct complained of includes the omission or misrepresentation of a material fact, or whether it merely states a claim for a breach of a state law duty. A board of directors' decision to oppose or welcome a takeover attempt involves the exercise of directorial judgment inherent in their role in corporate governance. *Treadway Cos. v. Care Corp.*, 638 F.2d 357, 381 (2d Cir.1980); *see Northwest Industries, Inc. v. B.F. Goodrich Co.*, 301 F.Supp. 706, 712 (N.D.Ill.1969) ("[M]anagement has the responsibility to oppose offers which,

---

**2.** This motion to dismiss was filed by the individual defendants and McCormick on September 17, 1982. Lehman Brothers Kuhn Loeb, Inc. joined in this motion on October 7, 1982.

Plaintiff's contention at oral argument that it was somehow inappropriate for defendants to file a motion to dismiss after the Second Amended Complaint is without merit.

**3.** No specific misrepresentations have been alleged against the other individual defendants. Paragraph 13A contains a general allegation that the individual defendants entered into a conspiracy to issue false and misleading statements.

in its best judgment, are detrimental to the company or its stockholders.").

*Id.* at 288. In an analogous situation, the Second Circuit, in affirming the entry of summary judgment for defendant directors, held that defendants' failure to disclose in a proxy statement that the motive for stock repurchases was "entrenchment of control" did not violate the federal securities laws. *Rodman v. Grant Found.*, 608 F.2d 64, 70–72 (2nd Cir.1979).

In *Biesenbach v. Guenther*, 588 F.2d 400 (3d Cir.1978), the Third Circuit affirmed a dismissal, pursuant to Fed.R.Civ.P. 12(b)(6), of a complaint alleging that certain loan activities undertaken by a majority of the directors violated Section 10(b) and Rule 10b–5. The Court stated:

> *Santa Fe* made clear that absent deception, misrepresentation, or nondisclosure a breach of fiduciary duty does not violate the statute or Rule. 430 U.S. at 476, 97 S.Ct. at 1302. Appellants believe that the misrepresentations and omissions that occurred in this case were: 1) the misleading statements by defendants that the transactions were in the best interests of the shareholders and 2) the defendants' failure to disclose the true purpose behind the activities. In effect, appellants are stating that the failure to disclose the breach of fiduciary duty is a misrepresentation sufficient to constitute a violation of the Act. We refuse to adopt this approach which would clearly circumvent the Supreme Court's holding in *Santa Fe.*

In *Twenty Seven Trust v. Realty Growth Investors*, 533 F.Supp. 1028 (D.Md. 1982), this Court held that a complaint failed to state a claim under the federal securities laws where the "deceptive scheme" complained of was that defendants, holders of a controlling stock interest, had failed to disclose to, or actively concealed from, plaintiff, a minority interest holder, that the purpose behind the merger was to deprive plaintiff of any share in defendants' federal tax loss carry forward. *Id.* at 1036–37.

■ Plaintiff has simply not shown that there was any deception or misrepresentation of fact. The alleged misrepresentations set out in paragraphs 12 and 14 of the complaint are not misrepresentations of fact, but only expressions of opinion by McCormick's chief executive officer. Such statements are commonly made in the course of takeover or merger negotiations, and do not constitute a violation of Rule 10b–5. "When the nature and scope of a transaction are clear, it is not necessary for the corporate instigators to characterize the various effects of the transaction as favorable or unfavorable or to evaluate its overall effect; such characterization is a matter of judgment, not fact." *Issen v. GSC Enters.*, 508 F.Supp. 1278, 1290 (N.D. Ill.1981), *citing Ala. Farm Bur. Mut. Cas. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 611 (5th Cir.1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980). As long as material facts are known or have been disclosed, it is not deceptive to characterize those facts with "pejorative nouns and adjectives." *Klamberg v. Roth*, 473 F.Supp. 544, 551 (S.D.N.Y.1979).

■ The alleged misrepresentation set out in paragraph 17 is insufficient to state a violation of Rule 10b–5. An allegedly misleading statement by directors that a transaction is not in the best interests of shareholders is at most a failure to disclose a breach of fiduciary duty. *Biesenbach, supra*, 588 F.2d at 402. In *Panter, supra*, the court found a meeting of directors to consider a tender offer and the willingness of directors to receive advice from their investment bankers was evidence that it was not deceptive for them to state that the offer had been carefully considered and that the offer was inadequate. 646 F.2d at 290.

IV. *Plaintiff Has Failed to Show that the Alleged Misrepresentations Were Material or Caused Plaintiff's Loss*

■ Defendants contend that the three alleged misrepresentations were "negative statements" concerning the impact of the Sandoz offer on McCormick,

and therefore could not possibly have been material to purchasers of McCormick's stock, which constitute the class that plaintiff seeks to represent. The standard of materiality requires "a showing that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable shareholder." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *Panter, supra*, 646 F.2d at 289. Each of alleged misrepresentations in the complaint, if taken into account, would have induced the reasonable shareholder not to purchase McCormick's stock, and therefore these misrepresentations did not have actual significance for plaintiff and other investors who purchased McCormick stock despite these alleged misrepresentations. Nothing in these statements would have induced plaintiff to purchase McCormick stock, and therefore these misrepresentations did not involve facts that were material to plaintiff.

## V. *Plaintiff Has Failed to Allege that She Relied on the Alleged Misrepresentations*

 A plaintiff bringing an action alleging violations of Section 10(b) and Rule 10b–5 must allege and prove reliance on the misrepresentations that are alleged in the complaint. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).[4] The complaint in this case must be dismissed because plaintiff has not alleged that she relied on defendants' alleged misrepresentations in purchasing her stock.

Defendants contend, and plaintiff does not dispute, that plaintiff did not directly rely upon the alleged misrepresentations in purchasing her stock. Plaintiff testified in her deposition that she purchased her McCormick stock solely upon the oral recommendation of her broker, who told her that there was a "takeover in the air" (pp. 19–21). Plaintiff's deposition also shows

that plaintiff did not even know about the alleged misrepresentations until the press releases were shown to her by her counsel after the original complaint was filed (pp. 29–30).

Plaintiff contends that direct reliance on the alleged misrepresentations is not necessary because she is alleging "fraud on the market." Several circuits do not require direct reliance where the fraud affects the market, on the ground that an investor has relied on the integrity of the market price. *See Panzirer v. Wolf*, 663 F.2d 365, 368 (2d Cir.1981), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982), *cert. granted sub nom. Price Waterhouse v. Panzirer*, 458 U.S. 1105, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982), *citing Ross v. A.H. Robins Co.*, 607 F.2d 545, 554 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Blackie v. Barrack*, 524 F.2d 891, 906–07 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). In such cases, the materiality of the misrepresentation created a presumption of reliance through its presumed effect on the market.

In *Panzirer, supra*, the Second Circuit extended the presumption of reliance to cases where the investor relied upon the integrity of the market in producing the information reported in the *Wall Street Journal*, which the investor read and relied upon in purchasing his stock. The Court also stated:

> Where the plaintiff acts upon information from those working in or reporting on the securities markets, and where that information is circulated after a material misrepresentation or omission, plaintiff has stated a sufficient claim of reliance on the misrepresentation or omission.

In its Memorandum and Order dated May 28, 1982, this Court stated that "[l]ike the plaintiff in *Panzirer*, the plaintiff here relied on the integrity of the information in

---

**4.** Because plaintiff has not alleged an omission of material fact, reliance cannot be presumed from a showing of materiality under the doc-

trine set out in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972).

the marketplace and is thus entitled to the same protection."

Further clarification of plaintiff's allegations has clearly shown that the "fraud on the market" theory is not applicable to this case. In the cases that have accepted this theory, the investor relying upon the integrity of the market price or upon the integrity of the information in the marketplace was injured because he purchased stock at an inflated price. But in this case the alleged misrepresentations were "negative statements" that would depress the market price of the stock, and thus would benefit plaintiff and other purchasers in the class she seeks to represent. Moreover, the basis of plaintiff's complaint is that defendants conspired to depress McCormick's stock price, which is inconsistent with a "fraud on the market" theory because such a conspiracy would benefit purchasers.

## VI. *Defendants' Use of Interstate Communications and the Federal Courts*

At the February 17, 1984 hearing before this Court, plaintiff advanced a new theory that the complaint states a cause of action under the federal securities laws because defendants used interstate communications, such as the mail and telephone system, and the federal courts in furtherance of their conspiracy to ward off and defeat the Sandoz offer.

■ Plaintiff has not offered, and this Court has not found, any case holding that claims concerning an alleged breach of fiduciary duty by directors may be stated as claims under the federal securities laws because interstate communications were used. Certainly such a theory does not excuse plaintiff's failure to establish the requisite elements of a Rule 10b–5 claim, including the presence of a misrepresentation of fact, materiality, and reliance.

McCormick's use of the federal courts in filing a federal securities action against Sandoz cannot be the basis for an action under Section 10(b) or Rule 10b–5. In *Panter v. Marshall Field & Co.*, 646 F.2d 271 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981), the court

held that the decision of directors to bring an antitrust suit against a takeover attempt could not, in light of *Santa Fe Industries v. Green*, be the basis for a federal securities claim. The court stated:

[T]he decision to resist a takeover is within the scope of directors' state law fiduciary duties, and there is no federal securities law duty to disclose one's motives in undertaking such resistance. [citations omitted]. Therefore even assuming the antitrust suit was filed with the "impure" intent to preserve the directors' position at the expense of the shareholders' best interests, no federal securities claim can lie for failure to disclose that intent.

*Id.* at 290–91.

## VII. *The Accounting Irregularities*

During the course of this case, plaintiff has taken two different positions on the relationship between the accounting irregularities, which are the subject of *Blaisdell* and the other Accounting Cases, and her allegations in this case. Allegations concerning these accounting irregularities are contained in Paragraph 13B of the Second Amended Complaint, which states:

B. During the class period, the individual defendants caused, allowed and permitted materially false and misleading sales and earnings financial reports ("financials") of McCormick to the [sic] published and disseminated to the public, including plaintiff and the class. Said false financials artificially inflated the McCormick common stock during the class period. The individual defendants fraudulently concealed said false financials, well knowing that if the Sandoz offer were allowed to proceed and occur, their fraud would be discovered by Sandoz and/or its auditors and accountants, thsu [sic] subjecting McCormick and themselves to litigation and penalties.

### A. *The Accounting Irregularities as a Motive for Defendants' Rejection of the Sandoz Offer*

One position taken by plaintiff is that the accounting irregularities were alleged in

paragraph 13B merely to show defendants' motive for rejecting and opposing the Sandoz offer. In her memorandum in support of her motion for class action certification, plaintiff assured the court that she had omitted Count 3 of the First Amended Complaint, and had added Paragraph 13B of the Second Amended Complaint in order "to show motivation for defendants' origination and participation in the alleged conspiracy regarding the Sandoz offer." At oral argument, plaintiff's counsel reaffirmed plaintiff's position that the purpose of alleging the accounting irregularities in paragraph 13B was to show the motive for defendant directors' actions in opposing the Sandoz offer. Plaintiff's counsel also stated that plaintiff did not seek damages in this case for the accounting irregularities.

█ In any event, defendants' failure to disclose their motive for rejecting the Sandoz offer does not state a claim under Section 10(b) or Rule 10b–5. "[T]he decision to resist a takeover is within the scope of the directors' state law fiduciary duties, and there is no federal securities law duty to disclose one's motives in undertaking such resistance." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 290 (7th Cir. 1981).

B. *The Accounting Irregularities as a Violation of Section 10(b) and Rule 10b–5*

Plaintiff appeared to take the position during certain stages of this case that the alleged accounting irregularities by McCormick violated Section 10(b) and Rule 10b–5. On page 3 of her reply to defendants' motion to dismiss, plaintiff contends that paragraph 13B of the Second Amended Complaint added new allegations that "certain misrepresentations and omissions by McCormick, including, among others, the false financial figures contained in special counsel's report, were all part and parcel of a conspiracy and scheme to defeat the Sandoz tender offer and as such, constituted a violation of Section 10(b). . . ." Moreover, in her response, plaintiff appeared to make the accounting irregularities the basis of her allegations of fraud. Plaintiff alleged that fraud was present in this case because defendants "fraudulently concealed" false and misleading sales and earnings financial reports (Second Amended Complaint, ¶ 13B). Thus plaintiff distinguished *Santa Fe* in the following way:

The distinction in *Augenstein* is that in fact fraud was committed, since the directors failed to inform the shareholders that their reason for rejecting the Sandoz offer was their desire, *not merely to retain their positions, but to prevent the accounting irregularities and the true financial picture of McCormick from coming to light.* The accounting fraud led to a falsely inflated market price for McCormick shares, diminishing the size of the premium that Sandoz was offering above that price. Thus, the McCormick shareholders were not in full possession of the true facts about their company and could not make an accurate judgment on the proposed tender offer. In this way the Sandoz offer was not merely defeated as a matter of business judgment, as defendants contend; it was defeated as part of and in order to cover up a fraud.

█ Even though plaintiff appeared to abandon this position at oral argument, the Court wishes to make clear that any attempt by plaintiff to resurrect a relationship between the alleged accounting irregularities, which are the subject of the Accounting Cases, and the alleged conspiracy involving McCormick's defense against the takeover attempt by Sandoz would be inconsistent with earlier proceedings in this case. This Court's Memorandum and Order of May 28, 1982 made it clear that there was no logical relationship between the alleged accounting conspiracy and the alleged Sandoz conspiracy. Even plaintiff recognizes that its "new allegations," contained in Paragraph 13(B) of the Second Amended Complaint, do not materially differ from Count 3 of the First Amended Complaint, which the plaintiff omitted from her Second Amended Complaint in order to comply with this Court's May 28, 1982 Or-

der concerning class certification. In footnote (*) on page three of her reply memorandum, plaintiff acknowledges that

In a sense, these allegations were in fact nothing new, since plaintiff has already alleged in the First Amended Complaint that the defendants had inflated earnings for the fiscal period ending November 30, 1980. Thus, the new allegations simply served to expand the period in which the false earnings reports were continuously filed by the defendants. The allegations contained in the report are the subject of a number of other class actions now pending before this Court.

Moreover, any attempt by plaintiff to resurrect her earlier claim that the alleged accounting irregularities by McCormick are a violation of Section 10(b) would produce several undesirable consequences. First, it would expose defendants to liability to plaintiff for the same conduct in two separate cases. Each of the Accounting Cases, including *Blaisdell* (which was filed by plaintiff's counsel on the same day as this case), alleges that McCormick artificially inflated its earnings for the 1977–1980 fiscal years in violation of Section 10(b) and Rule 10b–5. Second, plaintiff's new allegations would erode the benefits of the consolidation order and stipulations in the Accounting Cases. Third, it would be completely inconsistent for plaintiff to assert that defendants were conspiring to inflate McCormick's stock price through accounting irregularities and false financial reports, while the gravamen of her complaint is that defendants conspired to artificially *depress* the market value of McCormick's stock. The injured parties where the market price of a stock is artificially depressed are the *sellers*, not the purchasers, of that stock.

VIII. *Plaintiff's Pendent Claim Under State Law Must be Dismissed*

█ In light of the dismissal of plaintiff's federal claim, her claim of breach of fiduciary duty under state law must be dismissed for lack of pendent jurisdiction. The Supreme Court has stated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). "Pendent jurisdiction can be relied upon only where there is a claim conferring federal jurisdiction that will survive a motion to dismiss." *ITT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir.1975).

Dismissal of this case does not deprive plaintiff of a remedy for any of the allegations contained in the Second Amended Complaint. Plaintiff is a member of the plaintiff class in *Blaisdell*, which is consolidated with the Accounting Cases. That case will fully consider plaintiff's claims that she was injured as a result of defendants' artificially inflated earnings for the 1977–1980 fiscal years. Any claim by plaintiff that defendants breached their fiduciary duties relating to the Sandoz takeover attempt can be addressed by an appropriate action in state court.

For the reasons set out above, it is this 27th day of February, 1984, by the United States District Court for the District of Maryland,

ORDERED that defendants' motion to dismiss be, and the same hereby is, granted; and

ORDERED that the Clerk shall forward a copy of this Memorandum and Order to counsel for the parties.